UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIA VANG LEE,<br><br>   Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security<br><br>   Defendant. | **1:13-cv-01264-GSA**<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

## I.  INTRODUCTION

Plaintiff Sia Vang Lee ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income ("SSI") benefits pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

## II.  BACKGROUND AND PRIOR PROCEEDINGS[2]

Plaintiff is currently 47 years old. AR 32. She does not read, write, or speak English. AR

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. ECF Nos. 7, 8.
[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

34. In 2004, 2005, and 2009, Plaintiff worked briefly for one month each year for Knapp Farms picking blueberries, but she has not worked since (or before) then. AR 35, 168. Plaintiff has seven children, two of whom are under the age of 18. AR 33. She lives with her children and her husband. AR 33.

Plaintiff's alleged physical conditions include sciatica, a tailbone/spinal injury, back/chest pain, arthritis, and ulcers. AR 173. She also alleges psychiatric conditions, including depression and obsessive compulsive disorder. *Id*. She currently takes a number of medications to manage her symptoms, including acetaminophen, fluoxetine, gabapentin, omeprazole, and trazodone. AR 176.

Plaintiff previously applied for SSI in 2005, but her application was denied after a hearing in front of the Social Security Administration.[3] AR 560. On August 31, 2010, Plaintiff filed a new application for disability insurance benefits under Title XVI. AR 155-161. This application was denied initially on March 22, 2011 and on reconsideration on August 11, 2011. AR 94-99, 103-107. Plaintiff filed a request for a hearing on October 6, 2011. AR 108. The hearing was then conducted before Administrative Law Judge Danny Pittman (the "ALJ") on July 10, 2012. AR 28. On August 23, 2012, the ALJ issued an unfavorable decision determining that Plaintiff was not disabled. AR 12-22. Plaintiff filed an appeal of this decision with the Appeals Council. The Appeals Council denied her appeal, rendering the order the final decision of the Commissioner. AR 6-9.

**III.    THE DISABILITY DETERMINATION PROCESS**

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

---

[3] Although there is some overlap between the conditions alleged in the previous and current applications, the ALJ opted not to preclude Plaintiff from proceeding on her current application because he determined that there had been material changes in Plaintiff's condition and that Plaintiff had added impairments to the current application which had not previously been considered. AR 16, *citing Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988).

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. § 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. § 416.920(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically-determinable "severe" impairments,[4] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work,[5] and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. § 416.920(a)-(f).

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 12-22. In particular, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 31, 2010, the date specified in her application. AR 17. Further, the ALJ identified depressive disorder, fibromyalgia, headaches, gastritis, sciatica, obsessive compulsive disorder, ulcers, osteoarthritis posttraumatic stress disorder, gastroesophageal reflux disease as medically determinable impairments. AR 18. Nonetheless, the ALJ determined at step two of the five-step process that

---

[4] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 416.920(c).

[5] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations." 20 C.F.R. § 416.945. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

3

Plaintiff did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for twelve consecutive months. AR 18. Based on a review of the entire record, the ALJ thus determined that Plaintiff did not have a severe impairment or combination of impairments. The analysis thus terminated and the ALJ did not proceed to any further steps.

## IV. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

## V. DISCUSSION

### A. The Relevant Medical Evidence

Plaintiff argues that the ALJ improperly considered the medical evidence, as well as Plaintiff's own testimony, and thus erroneously determined that Plaintiff was not disabled. Specifically at issue is the ALJ's consideration of: (1) the opinion of Gerardine Gauch, Psy.D., a consulting examiner; and (2) Plaintiff's testimony to the ALJ. The parties do not contest the ALJ's assessment of the physicians who treated or provided examinations with respect to Plaintiff's physical condition (as opposed to her psychiatric conditions). Similarly, they do not contest the ALJ's treatment of Chue F. Vang, the claimant's brother, who submitted a third party function report about the Plaintiff. AR 21. The following review of the record is therefore limited the issues of the ALJ's evaluation of Dr. Gauch's opinion and Plaintiff's credibility.

#### i. James A. Nowlan, Jr., M.D.

Dr. Nowlan was a consulting examiner who examined Plaintiff as part of her first

application for SSI. AR 67. Plaintiff complained to Dr. Nowlan of pain in her back, legs, and right wrist. Although she claimed she could not bend her back more than 50 degrees, she easily bent over and straightened up when asked to remove her sandals. Dr. Nowlan reported that he "found no evidence of any pain in her legs that I could elicit other than what she said. Touching her legs and moving them produced no painful responses. Her back seemed perfectly fine when she was putting her shoes on and taking them off, but she said that she could not bend because of the pain." AR 222. He concluded that Plaintiff could stand and walk for six hours in an eight hour day and would be able to lift 10 pounds frequently and 25 pounds occasionally. AR 222.

### ii. Roger Fife, M.D.

Dr. Fife treated Plaintiff from 2008 to 2012. On October 12, 2010, Plaintiff was examined by Dr. Fife as part of a routine checkup. Despite reporting abdominal and back pain, as well as receiving treatment for a bacterial infection, Dr. Fife reported that Plaintiff "does not seem to be concerned about her disease—she just wants to get on disability because of her abdominal pain." AR 271. On April 4, 2011, she again came to Dr. Fife for a routine checkup and to refill medications. She complained to Dr. Fife that she had "been trying to get disability and has been turned down because she has no objective evidence of a disability." AR 260. Dr. Fife also reported that her "husband is upset that she has been turned down" and that he wanted a "placard for handicapped parking." *Id*. On May 12, 2011, Dr. Fife filled out a Physical Capacities Evaluation which determined that Plaintiff could sit for 4 hours in a workday; stand for 1 hour in a workday; walk for 1 hour in a workday; would need to alternate between sitting and standing every 30 minutes; and could frequently lift up to 5 pounds and occasionally lift up to 10 pounds. AR 251.

The ALJ gave Dr. Fife very little weight. AR 19. Plaintiff does not challenge this determination.

### iii. Kamalullah Yusufzie, M.D.

Dr. Yusufzie conducted a consultative examination of Plaintiff on January 27, 2011. AR 224. Plaintiff informed Dr. Yusufzie that she had never worked in this country and complained of pain in her lower back. AR 224. Dr. Yusufzie observed that Plaintiff did not require any assistive

devices and that she "got on the exam table and got off of the exam table with no problems." Moreover, she "took her shoes off and put them back on with no problems." AR 225. Dr. Yusufzie concluded that Plaintiff could stand, walk, and sit without limits. AR 227. Dr. Yusufzie also found that Plaintiff had no lifting and carrying, postural, manipulative, visual, communicative, or workplace environmental limits. AR 227. The ALJ gave Dr. Yusufzie great weight. AR 19. Plaintiff does not challenge this determination.

### iv.  Keith M. Quint, M.D. and A. Khong, M.D.

Drs. Quint and Khong are non-examining physicians who reviewed Plaintiff's medical records on February 22, 2011 and July 26, 2011, respectively. AR 20, 246, 289. Both determined that Plaintiff did not have any severe medical impairments. AR 246, 290. In fact, Dr. Khong noted that there "has been improvement" in Plaintiff's condition since the first hearing decision was issued. AR 290. After a review of the record, both also concluded that Plaintiff's credibility was suspect based on her apparent exaggeration of symptoms with other physicians and inconsistencies in her ability to spell her name in English.[6] AR 244, 290. Both Drs. Quint and Khong were afforded great weight by the ALJ, an assessment that Plaintiff does not challenge. AR 20.

### v.  Phaedra Caruso-Radin, Psy.D. and Norman Zukowsky, Ph.D.

Drs. Caruso-Radin and Zukowsky are, like Drs. Quint and Khong, non-examining sources. Dr. Caruso-Radin filled out a Psychiatric Review Technique form in which she reviewed Plaintiff's medical records and concluded that the "[o]bjective findings do not support [the] severity of [the] allegations." AR 244. She goes on to explain that there are "many inconsistencies" in Plaintiff's story and that the Plaintiff is simply "not credible." Dr. Zukowsky later reviewed Plaintiff's medical records on August 11, 2011 and came to the same conclusion. AR 291. The ALJ gave great weight to Drs. Caruso-Rain and Zukowsky. As with the prior doctors, Plaintiff does not challenge this determination.

---

[6] In a consultative examination with Gerardine Gauch, Psy.D., Plaintiff claimed that she was unable to spell her own name. AR 231. However, in a phone call with the Department of Disability Services, Plaintiff, when asked to spell her name, retrieved her social security card and, with the assistance of the card, spelled "her name in Hmong and she read it off her SS card and spelled it in English." AR 195.

### *vi. Gerardine Gauch, Psy.D.*

Dr. Gauch is a consultative examiner who conducted an evaluation of Plaintiff on February 5, 2011. AR 228. As part of the evaluation, Dr. Gauch interviewed Plaintiff, who informed her that her "parents died at the hands of the communists." AR 229. She also reported no history of employment. AR 230. Dr. Gauch determined that her "[s]tream of mental activity was within normal limits" and her speech was "logical, coherent, and concise." AR 230. She also found that the Plaintiff's "[t]hought content was appropriate" and that there "were no indications of hallucinations or delusions." AR 230. Plaintiff's "concentration ability was within normal limits." AR 231. Dr. Gauch concluded that Plaintiff had a poor ability to: understand and remember very short and simple instructions; to understand and remember detailed instructions; complete a normal workday or workweek without interruption; or, deal with various changes in the work setting. AR 232-233. In addition, Plaintiff had a fair ability to: maintain concentration and attention; accept instructions from a supervisor; sustain an ordinary routine without special supervision; or, interact with coworkers. AR 232-233.

The ALJ gave very little weight to Dr. Gauch's opinion. Plaintiff challenges this assessment, claiming that: (1) the ALJ's determination that Plaintiff had a history of exaggeration is unjustified because it arises out of a misunderstanding of the distinction between reading and spelling[7]; (2) Dr. Gauch was not relying merely on self-reports when she formulated her opinion; and (3) it was inappropriate for the ALJ to give weight to non-examining sources while rejecting an examining source. Plaintiff's Opening Brief 8:13-19, 9:1-18, 10:14-21, ECF No. 11.

Defendant counters that: (1) the ALJ properly rejected Dr. Gauch's opinion because it was internally inconsistent; and (2) there was evidence that Plaintiff exaggerated her symptoms because they were inconsistent with other evidence in the record. Defendant's Opposition Brief 6:11-7:9, ECF No. 16.

///

///

---

[7] Plaintiff argues that she was not lying to Dr. Gauch when she said she could not spell her name; prior instances in which she had spelled her name had, in fact, only involved reading her name off of her Social Security card, which is functionally simpler than spelling her name without assistance.

7

**B. Legal Standards**

At step two of the Social Security Administration's five-step process, Plaintiff has the burden to demonstrate that she has a medically determinable impairment or combination of impairments. *Bowen v. Yuckert*, 482 U.S. 137, 146-47 (1987); *see also* 20 C.F.R. § 416.920(c). She must also show that the impairment (or combination of impairments) at issue is severe. *Id*. To demonstrate that an impairment is severe, Plaintiff may reference symptoms such as pain, provided that they are supported by medical evidence. 20 C.F.R. § 416.908. Subjective symptoms referenced by the Plaintiff must arise from a medically determinable impairment. 20 C.F.R. § 416.929 ("[s]ymptoms, such as pain […] will not be found to affect [a claimant's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present"); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ may reject "claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain" where claimant fails to produce "objective medical evidence of an underlying impairment"). The Court must thus determine "whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

With respect to medical evidence, cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). And, in turn, examining sources generally receive more weight than those of non-examining sources.

Because the opinion of an examining physician is generally entitled to greater deference than a non-examining physician, "the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). The

opinion of a non-examining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1456 (9th Cir. 1984). It can, however, *support* the rejection of the opinion of a treating or examining physician where combined with other evidence. *See, e.g., Magallanes*, 881 F.2d at 751-55 (rejecting the opinion of a treating physician where a non-examining physician's findings were corroborated by "laboratory test results. . . contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion"); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995) (rejecting an examining psychologist's opinion where it conflicted with those of non-examining mental health professionals, "testimony from the claimant himself and with medical reports contained in the record"); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995).

Thus, the opinions of non-treating or non-examining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. *Thomas v. Barnhart*, 278 F. 3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record"). Where medical reports are inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d at 639, 642 (9th Cir. 1982) *quoting Waters v. Gardner*, 452 F.2d 855, 858 n. 7 (9th Cir.1971).

**C.  The ALJ's Rejection of Dr. Gauch's Opinion was Appropriate**

Dr. Gauch's ultimate findings that Plaintiff had limitations are contradicted by the findings of Drs. Caruso-Radin, Zukowsky, Quint, Khong, and Yusufzie. Consequently, the ALJ need only provide specific and legitimate reasons supported by substantial evidence to reject Dr. Gauch's findings. *Lester*, 81 F.3d at 830-31.

The ALJ gave little weight to Dr. Gauch's findings, explaining that:

> I give very little weight to this opinion because it is not supported by the appropriate thought content, normal stream of mental activity and average level of intellectual functioning (Exhibit B3F, p. 3). The opinion and findings of Dr.

9

> Gauch are further discounted because there is evidence of exaggerated [sic] during her evaluation as well. For example, Dr. Gauch reported that the claimant was disoriented and unable to spell her name (see Exhibit B3F, pp. 3-4), but that is inconsistent with treatment notes showing that she was oriented times 3 with a normal thought process (see Exhibit B10F, p. 3). In addition, records show that during an interview, she not only spelled her name, but she read it off her Social Security Card and translated it into English (Exhibits B4F, p. 11; B5F, p. 2). Thus, it appears as if she was exaggerating during this evaluation, and as a result, little weight is given to this opinion.

AR 20-1.

It appears that the ALJ thus gave Dr. Gauch's opinion little weight because: (1) her own records are inconsistent with the ultimate conclusions she reached (*i.e.*, the opinion "is not supported" by the findings of "appropriate though content, normal stream of mental activity and average level of intellectual functioning"); and (2) the opinion was based on subjective self-reports by the Plaintiff which appear to have been exaggerated. Both reasons constitute specific and legitimate reasons to reject Dr. Gauch's opinion. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (ALJ "reasonably rejected" physician's opinion where it was "based almost entirely on the claimant's self-reporting"); *Tomasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (upholding rejection of physician's opinion where "ultimate conclusions . . . did not mesh with her objective data or history").

The ALJ could have reasonably determined that either rationale was supported by substantial evidence. As explained by the ALJ, Plaintiff appears to have given false, or, at the very least, misleading information when she informed Dr. Gauch that she could not spell her name.[8] AR 231. In addition, large portions of Dr. Gauch's opinion appear to be based on reports by Plaintiff, including a description of her daily routine and reports of her medical and psychological history.[9] Given the ALJ's finding that Plaintiff lacked credibility, it was reasonable

---

[8] Plaintiff argues in her Opening Brief that the mere fact that she could read her name off of her Social Security card does not establish that she could actually spell her name without it. But the issue is not whether Plaintiff has the ability to read or speak in English without a visual aid; the issue is that Plaintiff appears to have given different responses to the same question in different contexts. When asked to spell her name in a phone call with the Department of Disability Services, Plaintiff retrieved her Social Security card and then proceeded to spell her name in English, even though an interpreter offered to translate her spelling from Hmong. AR 244. When asked to spell her name by Dr. Gauch, she simply stated that she could not spell her name and left the matter at that. Put simply, it was reasonable for the ALJ to infer that Plaintiff was being deliberately unhelpful (or "exaggerating" her symptoms) only when the circumstances called for it—*e.g.*, when her mental state was under evaluation. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[9] Plaintiff also appears to have provided slightly different stories to different physicians. Dr. Gauch, for example,

10

for the ALJ to reject a medical opinion based, in part, on her statements. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record").

Similarly, substantial evidence indicates that Dr. Gauch's report is inconsistent with her ultimate conclusions. As explained above, Dr. Gauch found that Plaintiff had appropriate thought content, a normal stream of mental activity, and an average level of intellectual functioning. She also found that Plaintiff's "concentration ability was within normal limits." AR 231. Finally, she acknowledged that some of the tests she was providing to Plaintiff may have been inaccurate because of "cultural factors." AR 231. Despite this, she determined that Plaintiff would not be able to complete a normal workday or workweek and that Plaintiff had a poor ability to understand and remember very short and simple, as well as detailed, instructions. AR 232. In addition, some of Dr. Gauch's preliminary findings are not entirely consistent. She argues, for instance, that Plaintiff's "attitude toward seeking employment is fair," but acknowledges that plaintiff has no work history. AR 232. In short, there appears to be substantial evidence from which the ALJ could determine that Dr. Gauch's report is internally inconsistent and thus should be given little weight.

### D. The ALJ's Evaluation of Plaintiff's Credibility was Appropriate[10]

To evaluate the credibility of a claimant's testimony regarding subjective complaints of pain and other symptoms, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id*. The claimant is not required to show that the

---

reports that Plaintiff's parents were both killed by communists. AR 229. In other reports, however, she states that her father was killed by communists and her mother died in childbirth. AR 306. Similarly, Plaintiff told Dr. Gauch that the only source of social support she had was her cousin. AR 232. She reported to a different doctor, however, that she had three siblings with whom she spoke on a weekly basis to "help her emotionally." AR 306.

[10] Plaintiff's brother, Chue F. Vang, also completed a third party function report to which the ALJ assigned little weight. Plaintiff's function report and testimony are substantially similar to this report (in fact, it appears that Vang completed both function reports (AR 186, 194)). Plaintiff does not challenge the ALJ's finding that Vang's report is unsupported by and inconsistent with the record.

11

impairment "could reasonably be expected to cause the *severity* of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (emphasis added). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of the symptoms for "specific, clear and convincing reasons" that are supported by substantial evidence. *Id*.

> An ALJ can consider a variety of factors in assessing a claimant's credibility, including:
>
> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted). Other factors can include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). An ALJ can only rely on an inconsistency between a claimant's testimony and the objective medical evidence to reject that testimony where the ALJ specifies which "complaints are contradicted by what clinical observations." *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297. An ALJ properly discounts credibility if she makes specific credibility findings that are properly supported by the record and sufficiently specific to ensure a reviewing court that she did not "arbitrarily discredit" the testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991).

Here, the ALJ concluded that "claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms." AR 21. He questioned, however, "her statements concerning the intensity, persistence and limiting effects of [her] symptoms." AR 21. The ALJ is thus required to provide "specific, clear and convincing reasons" for finding Plaintiff not credible. *Vasquez*, 572 F.3d at 591.

///

///

///

With respect to Plaintiff's credibility, the ALJ explains that:

> In this case, the claimant is less than fully credible because of inconsistent statements and unsupported allegations coupled with exaggeration of symptoms. For example, the claimant testified that she is unable to lift or carry more than 5 pounds and she can only sit for 30 minutes at a time and stand or walk for 15 minutes at a time. However, these severe limitations are not supported by the evidence, which shows an unremarkable gait with a normal range of motion and full motor strength in the upper and lower extremities bilaterally (Exhibit B2F, pp. 1-3). The claimant further testified that she is unable to bend over to pick something up off the ground, but as discussed above, that is inconsistent with her demonstrated ability at consultative examinations where she bent over to take off and put on her shoes without difficulty (Exhibits B1F; B2F). Furthermore, as discussed above, there was evidence of exaggeration during Dr. Nowlan and Dr. Gauch's evaluations and treatment notes show that she has been trying to get disability, but was turned down because of a lack of objective evidence (Exhibit B7F, pp. 8, 19). These inconsistent and unsupported statements coupled with symptom exaggeration significantly diminishes credibility, namely with regard to the alleged severity of her impairments.

AR 21.

The reasons that the ALJ cites for finding Plaintiff not credible appear to be specific, clear, and convincing. **First**, he argues that Plaintiff's statements are inconsistent with the objective evidence in the record. He does this with specificity, identifying precisely which statements Plaintiff made (*e.g.*, Plaintiff said she was "unable to lift or carry more than 5 pounds") and matching those statements up with evidence in the record that contradicts those statements (*e.g.*, records show "full motor strength in the upper and lower extremities bilaterally"). **Second**, he points to instances in which Plaintiff's statements were inconsistent with her own statements or actions. This rationale appears to fall squarely within the realm of "ordinary techniques of credibility evaluation" which the ALJ was well within his bounds to use. *Davis v. Alaska*, 415 U.S. 308, 317 (1974) ("biases, prejudices, or ulterior motives" of a witness are "always relevant as discrediting the witness and affecting the weight of his testimony").

Each of the reasons the ALJ has offered appears to be supported by substantial evidence, as well. That the ALJ cites as inconsistent do, in fact, appear in the record. And there is ample evidence showing that each of those statements is contradicted. For instance, the ALJ points out that Plaintiff stated that if she dropped something, she would not be able to bend over and pick it up. AR 41 ("**Q.** If you dropped something, could you bend over and pick it up? **A.** No, I cannot."). But her statement is contradicted by at least two physicians. AR 222, 225. Similarly,

13

and as detailed above, there is substantial evidence to suggest that Plaintiff has exaggerated or made inconsistent statements about: (1) her symptoms (*e.g.*, her ability to bend at the waist and take off her shoes); (2) her limitations (*e.g.*, her ability to spell/read her name); and even (3) her psychosocial history (*e.g.*, her sources of social support and her family history). Moreover, Plaintiff explicitly told Dr. Fife, her treating physician, how upset she and her husband had been when she failed to qualify for disability benefits the first time she applied because she had no objective evidence of a disability. AR 260. Given the weight of these facts, it was entirely reasonable for the ALJ to conclude that Plaintiff lacked credibility when discussing the severity of her symptoms.

### VI.  CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision that the Plaintiff is not significantly limited in her ability to perform basic work activities is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant, Carolyn W. Colvin, and Commissioner of Social Security and against Plaintiff, Sia Vang Lee.

IT IS SO ORDERED.

Dated:   **March 6, 2015**                            **/s/ Gary S. Austin**
                                                                        UNITED STATES MAGISTRATE JUDGE